UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Tatum Gitlitz, | Case No.: 2:24-cv-01081-JAD-DJA |
| Plaintiff | |
| v. | **Order Granting Motion to Compel Arbitration and Stay Case** |
| Bitrate Productions, | [ECF No. 10] |
| Defendant | |

Tatum Gitlitz sues her former employer, Bitrate Productions, alleging that the company forced her into a demoted position and cut her pay because she became pregnant. Bitrate moves to compel arbitration, arguing that Gitlitz's employment agreement contains a valid, broad arbitration clause that encompasses her claims. Gitlitz opposes, contending that this clause only covers claims arising from or relating to the employment agreement itself and, because the agreement is silent about discrimination-based wrongful termination claims, the parties did not stipulate to arbitrate this dispute. Because I find that Gitlitz's claims are governed by the arbitration clause in her employment agreement, I grant Bitrate's motion to compel and stay this case pending arbitration.

## Background[1]

Starting in October of 2022, Tatum Gitlitz was hired as a "Model Dealer" for live online gaming.[2] In her role, she frequently appeared on camera during live online gambling events.[3]

---

[1] These facts are summarized from Gitlitz's complaint (ECF No. 1) and are not intended as findings of fact.

[2] ECF No. 1 at ¶ 13.

[3] *Id.* at ¶ 14.

Sometime during the next year, Gitlitz became pregnant.[4]  A human-resources manager told her that "Corporate is saying you are huge" and that she could no longer appear on camera.[5]  Despite Gitlitz's assurances that she could perform her duties, this manager "threatened that the company would pursue 'legal action' against [Gitlitz] if she refused to move to an off-camera position."[6]

Bitrate later offered Gitlitz the choice of either taking a $10-per-hour demotion for an off-camera position or having her employment terminated.[7]  Gitlitz remembered finding this option "confusing" because Bitrate had Model Dealers who worked off camera and were compensated at the same hourly rate that she had been by the company before her pregnancy.[8]  When Gitlitz asked if she could work in this off-camera role at her pre-pregnancy rate, her request was denied.[9]  Bitrate terminated her employment and told her not to return unless she agreed to the demotion.[10]

Gitlitz filed suit, claiming that Bitrate violated Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, by "refusing to accommodate her pregnancy," "trying to force a demotion" upon her, and "ultimately forcing her to leave the company"; Nevada Revised Statute 613.330 for subjecting her to "loss of compensation, demotion of her job and of her pay, and ultimately loss of her job"; and the Nevada's Pregnant Workers Fairness Act because the company asked her to accept a demotion under the guise of an "accommodation,"

---

[4] *Id.* at ¶ 16.
[5] *Id.* at ¶ 18.
[6] *Id.*
[7] *Id.* at ¶ 19.
[8] *Id.* at ¶ 20.
[9] *Id.* at ¶ 24.
[10] *Id.* at ¶ 25.

2

which intentionally interfered with her ability to seek legal redress.[11]  Bitrate now moves to compel arbitration of these claims based on the arbitration clause in Gitlitz's employment agreement, which reads:

> 21. SETTLEMENT BY ARBITRATION: Any claim or controversy that arises out of or relating to this agreement, shall be settled by arbitration in accordance with Nevada Revised Statutes, Chapter 38, and Judgment on the award rendered by the arbitrators may be entered in any Nevada Court having jurisdiction.  Each party shall pay the fees of the arbitrator he/she selects and of his/her own attorneys, and the expenses of his/her witnesses and all other expenses connected with presenting his/her case.  Other costs of the arbitration, including the cost of any record or transcripts of the arbitration, administrative fees, and all other fees and costs, shall be borne equally between the parties.[12]

It also requests that this lawsuit be stayed pending that arbitration.[13]

## Discussion

The Federal Arbitration Act (FAA) states a strong preference that parties arbitrate disputes when they have a valid agreement to do so.[14]  Under the FAA, a district court must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."[15]  In answering these questions, the court must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy favoring arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."[16]  An arbitration agreement "may be invalidated by

---

[11] *Id.* at ¶¶ 30–52.

[12] ECF No. 10-1 at 6.

[13] *Id.*

[14] 9 U.S.C. § 2; *see also Shearson/American Exp., Inc. v. McMahon*, 42 U.S. 220, 220 (1987) ("The Arbitration Act establishes a federal policy favoring arbitration, requiring that the courts rigorously enforce arbitration agreements.").

[15] *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

[16] *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).

'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."[17] Gitlitz does not deny that her employment agreement with Bitrate contains an arbitration clause or that the FAA governs that arbitration agreement.[18] Instead, she argues that her claims fall outside the scope of the clause or that the provision is invalid because it is unconscionably broad.[19]

**A.    Gitlitz's claims fall within the scope of her arbitration agreement.**

Gitlitz contends that the arbitration clause in her employment agreement does not cover employment-discrimination claims and that she "only agreed to arbitrate claims actually arising or related to the employment agreement itself."[20] Bitrate responds that the agreement's language, which broadly governs "[a]ny claim or controversy that arises out of or relating to" the agreement, encompasses Gitlitz's claims because they are employment-discrimination claims that arise from or relate to Gitlitz's employment.[21]

Generally, it's the court's job to determine the validity and scope of an agreement to arbitrate, including whether the parties have submitted a particular dispute to arbitration.[22] "[A]rbitration is simply a matter of contract between parties; it is a way to resolve those

---

[17] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

[18] *See* ECF No. 14 at 2.

[19] *Id.* at 3–5.

[20] ECF No. 14 at 2.

[21] *Id.*

[22] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("The question [of] whether the parties have submitted a particular dispute to arbitration" is a "question of arbitrability" and "an issue for judicial determination."); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).

4

disputes—but only those disputes—that the parties have agreed to submit to arbitration."[23] And, "an order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[24] To resolve questions of scope, courts "look to the express terms of the agreements at issue," "keeping in mind that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"[25]

The Ninth Circuit has long held that statutory claims are subject to arbitration when the arbitration agreement broadly "refer[s] to 'any disputes,' 'all claims,' and disputes 'arising from'" the parties' contractual arrangement.[26] And broad arbitration clauses containing phrases like "'any dispute arising out of this Agreement,' ordinarily require[] [the court] to hold that the parties have provided for arbitration of disputes regarding termination . . . ."[27] As the Ninth Circuit panel in *Cape Flattery Limited v. Titan Maritime, LLC* explained, "when parties intend to include a broad arbitration provision, they provide for arbitration 'arising out of or relating to'

---

[23] *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

[24] *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1986)).

[25] *Ferguson v. Corinthian Coll., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)); *see also Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1139 (9th Cir. 1991).

[26] *See, e.g.*, *Ferguson*, 733 F.3d at 938 (reasoning that plaintiff's unfair-competition law, false-advertising law, and Consumer Legal Remedies Act claims fell within the scope of an arbitration agreement, which broadly stated that "any disputes" and "all claims" "arising from [her] enrollment" were arbitrable).

[27] *Camping Constr. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1339 (9th Cir. 1990).

the agreement."[28] That is because "factual allegations need only 'touch matters' covered by the contract containing the arbitration clause" to be encompassed in its scope.[29]

The language in Gitlitz's arbitration clause that "[a]ny claim or controversy that arises out of or relating to this agreement, shall be settled by arbitration"[30] suggests that the parties intended the clause to have a broad application and that factual allegations need only "touch matters" covered by the employment agreement. The breadth of this clause, along with the fact that Gitlitz does not contend that the parties intended to exclude employment-discrimination claims from its reach, lead me to conclude that her claims squarely fall within the arbitration clause's broad scope.

**B.   The lack of explicit language regarding discrimination claims in the arbitration clause is not determinative.**

Gitlitz contends that, even if the arbitration agreement covers her claims, Bitrate's motion to compel arbitration must still be denied because a knowing and express waiver of the judicial forum is required for an employment-discrimination claim to be forced into arbitration. She relies on the "knowing waiver doctrine" and argues that the waiver of the judicial forum for civil-rights claims "must be knowing, notwithstanding federal policy favoring arbitration."[31]

It is true that the Ninth Circuit has held that "[a]ny bargain to waive the right to judicial forum for civil rights claims . . . in exchange for employment or continued employment must be at least express; the choice must be explicitly presented to employee and the employee must

---

[28] *Cape Flattery Ltd. v. Titan Mar.*, LLC, 647 F.3d 914, 922 (9th Cir. 2011).
[29] *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).
[30] ECF No. 10-1 at 6.
[31] ECF No. 14 at 4.

explicitly agree to waive the specific right in question."[32]  This rule extends to Title VII claims, so a Title VII plaintiff may only be "forced to forego her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration."[33]  But the Ninth Circuit has only found waivers to not be "knowing" or "express" when nothing in the parties' agreement would have put the plaintiff on notice that she would be forced to arbitrate such claims, and those cases are inapposite.

For example, in *Prudential Insurance Company of America v. Lai*, the Ninth Circuit held that a Title VII claim was not arbitrable because the court could not find that the employee "knowingly agreed to submit such disputes to arbitration."[34]  But the *Prudential* employees never received the terms of the arbitration agreement (it was contained in a financial-industry filing they weren't provided), it "did not purport to describe the types of disputes that were to be subject to arbitration," and the employees "were not otherwise on notice that they might be agreeing to arbitrate employment disputes."[35]  The court similarly found an arbitration provision unenforceable in *Nelson v. Cyprus Bagdad Copper Corporation* because it was contained in an employee handbook, and the employee had merely signed a form acknowledging that he had "received a copy of the" handbook, understood that it was "a guideline to the Company's policies and procedures," and that he agreed "to read it and understand its contents" and ask questions if any came up.[36]  "Nothing in that acknowledgment notified" him that the handbook

---

[32] *Nelson v. Cyprus Bagdad Cooper Corp.*, 119 F.3d 756, 762 (9th Cir. 1997).

[33] *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1305 (9th Cir. 1994).

[34] *Id.*  While *Prudential* specifically concerns Title VII claims, as the court noted, "the [Federal Arbitration Act] has the same application to state law claims . . . as it does to Title VII claims." *Id.* at 1301 n. 1.

[35] *Id.* at 1303.

[36] *Nelson*, 119 F.3d at 758.

7

"contained an arbitration clause or that his acceptance of the handbook constituted a waiver of his right to a judicial forum in which to resolve claims covered by the ADA."[37] He didn't even agree to be bound by the handbook's terms.[38]

The facts here starkly contrast those in *Prudential* and *Nelson*. Bitrate's arbitration clause is in Gitlitz's employment agreement itself, not in a separate document. There's also no dispute that Gitlitz signed the agreement and was able to read it before signing. Plus, the arbitration clause is clearly marked and put Gitlitz on notice that she was waiving the judicial forum for all claims related to her employment. So the knowing waiver doctrine does not preclude arbitration here as it did in *Prudential* and *Nelson*.

In effect, Gitlitz is asking this court to broaden the knowing waiver doctrine to hold that an arbitration agreement must expressly reference employment-discrimination claims in order for the court to compel their arbitration. But such a rule would contravene the FAA's dictate that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[39] Indeed, courts have consistently found arbitration agreements enforceable for statutory claims unless "Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."[40] Gitlitz has identified nothing to

---

[37] *Id.* at 761.

[38] *Id.*

[39] *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985) (explaining that "insofar as the allegations underlying the statutory claims touch matters covered by the enumerated articles, [courts] properly resolve[] any doubts in favor of arbitrability").

[40] *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 80 (2000); *see Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1203 (9th Cir. 2021) (holding that, if a party agrees to arbitration, that party will be held to that agreement unless congressional intent to preclude waiver or judicial remedies for the statutory rights at issue is shown); *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1324–26 (9th Cir. 2015) (holding that the plaintiff knowingly waived his

suggest such an intention for the claims she asserts here, so I do not find that the knowing waiver doctrine precludes arbitration of her claims.

**C.      The agreement is not unconscionable.**

Gitlitz alternatively argues that the arbitration agreement is unenforceable because it is substantively and procedurally unconscionable.[41] "[U]nconscionability is governed by state law."[42] Nevada law requires both procedural and substantive unconscionability for a court to refuse to enforce an arbitration provision.[43] Procedural unconscionability refers to a party's unequal bargaining power and misunderstanding of the provision's effects.[44] Substantive unconscionability focuses on whether an agreement's terms are one-sided or bilateral.[45] Gitlitz "bears the burden of proving that the [agreement] is unenforceable."[46]

### 1.      *Procedural unconscionability*

"An arbitration clause is procedurally unconscionable when a party has no 'meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the contract and its effects are not readily ascertainable upon a review of the contract.'"[47] To avoid procedural unconscionability, an arbitration provision must

---

right to a judicial forum for his Title VII claim and equivalent state-law claims); *Simula Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

[41] ECF No. 4–7.

[42] *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009).

[43] *Burch v. Second Judicial Dist. Court*, 49 P.3d 647, 650 (Nev. 2002).

[44] *D.R. Horton Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004) (overruled on other grounds by *U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 34 (Nev. 2018)).

[45] *Id.* at 1162–63.

[46] *Mortensen v. Bresnan Comms., LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013).

[47] *Gonski v. Second Jud. Dist. Ct.*, 245 P.3d 1164, 1169 (Nev. 2010) (overruled on other grounds by *U.S. Home Corp.*, 415 P.3d at 42).

be conspicuous and put the signer on notice that she is giving up important legal rights.[48] Misleading or complicated language can suggest procedural unconscionability.[49] And a party's ability to negotiate the terms of an agreement factors into a procedural-unconscionability review.[50] For example, in *Gonski v. Second Judicial District Court*, the Nevada Supreme Court found procedurally unconscionable an arbitration clause that was typed in normal-sized font and placed on page 15 of an 18-page agreement "in the midst of identically formatted paragraphs, even though" other provisions were "called out through the use of all capital letters."[51] And although the signers initialed the bottom of the page containing the arbitration provision, "nothing drew their attention to the importance of what those pages contained."[52]

Gitlitz argues that her arbitration clause contains "incomplete and misleading language" and that she was not sufficiently on notice that she was giving up substantial rights.[53] But the form and substance of the paragraph belie her claim. It is plainly written, the provision is sectioned off by a conspicuous heading that reads "SETTLEMENT BY ARBITRATION," and it is distinguished by bold, capital letters.[54]

There is also nothing in this record that suggests that Gitlitz was pressured into signing the agreement or had no other options at the time of signing. Even if Gitlitz misunderstood the scope of the arbitration clause, her subjective understanding is not dispositive. As the Nevada

---

[48] *Id.* at 1170.
[49] *Id.* at 1169.
[50] *Id.* at 1162.
[51] *Id.* at 1170.
[52] *Id.*
[53] ECF No. 14 at 9.
[54] ECF No. 10-1 at 6.

Supreme Court has held, "parties to a written arbitration agreement are bound by conditions regardless of their subjective beliefs at the time the agreement was executed."[55] So Gitlitz hasn't established that the arbitration agreement is procedurally unconscionable.

### 2. *Substantive unconscionability*

The substantive-unconscionability inquiry examines whether the agreement contains "overly harsh or one-sided terms."[56] Gitlitz argues that the arbitration clause is "one-sided and oppressive" because it gives Bitrate the permission to "run up the optional arbitration costs, knowing that they split between the parties, for the purposes of draining [her] financial resources."[57] She cites *Ingle v. Circuit City Stores, Inc.*,[58] *Ting v. AT&T*,[59] and *D.R. Horton Inc. v. Green*[60] to support her argument.

*Ingle* offers no real support for Gitlitz's position. The *Ingle* court found that an agreement's requirement that the employee and employer each pay one-half of the arbitration costs and giving the arbitrator the discretion to "require the [employee] to pay [the employer's] share of the costs of arbitration and incidental costs" "offend[ed] basic principles of fairness" and was "harsh and unfair to employees seeking to arbitrate legal claims" and thus substantively unconscionable.[61] But Gitlitz's agreement contains no similar provisions. The clause states that "[e]ach party shall pay the fees of the arbitrator he/she selects," as well as "other expenses

---

[55] *Kindred v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*, 996 P.2d 903, 907 (Nev. 2000) (quoting *Campanelli v. Conservas Altamira, S.A.*, 477 F.2d 870, 872 (1970)).

[56] *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184, 195 (S.D. 2007).

[57] ECF No. 10 at 11.

[58] *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003).

[59] *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003).

[60] *D.R. Horton Inc. v. Green*, 96 P.3d 1159 (Nev. 2004).

[61] *Ingle*, 328 F.3d at 1178.

connected with presenting his/her case," including the attorneys and witnesses chosen by that party.[62] It also dictates that other costs, "including the cost of any record or transcripts of the arbitration, administrative fees" be shared among the parties.[63] The agreement does not require that any party bear the other's share of costs. I therefore cannot conclude that these provisions are overly harsh or offend basic fairness principles.

Nor does the Nevada Supreme Court's decision in *D.R. Horton* compel the conclusion that Gitlitz's arbitration agreement is substantively unconscionable. In that case, the court found the agreement substantively unconscionable for two reasons: (1) it had a one-sided $10,000 liquidated-damages provision penalizing homebuyers who forgo arbitration but imposed no similar penalty on D.R. Horton, and (2) it required "that each party pay equally for the costs of arbitration."[64] Although the Court acknowledged that "an arbitration agreement's silence regarding potentially significant arbitration costs does not, alone, render the agreement enforceable," it explained that "'the existence of large arbitration costs could preclude a litigant from effectively vindicating her rights in the arbitral forum.'"[65] But Gitlitz's agreement contains no liquidated-damages penalty. For this reason, *Ting v. AT&T*—in which the Ninth Circuit found an arbitration "scheme unconscionable because it impose[d] on some consumers costs greater than those a complainant would bear if . . . she would file the same complaint in court"[66]—is also inapposite.

---

[62] ECF No. 10-1 at 6.

[63] *Id.*

[64] *D.R. Horton*, 96 P.3d at 1165.

[65] *Id.* (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)).

[66] *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003).

Neither has Gitlitz demonstrated that arbitration would be prohibitively expensive. The United States Supreme Court held in *Green Tree Finance v. Randolph* that when "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."[67] Gitlitz has not met that burden here. I therefore find that, because the agreement's terms are not "overly harsh or one-sided," and Gitlitz has not shown that arbitration would be prohibitively expensive, the agreement is not substantively unconscionable.

* * *

I thus conclude that the arbitration clause in Gitlitz's employment agreement is enforceable. I also find that all of Gitlitz's claims fall within the arbitration clause's broad scope because they "touch matters" covered by the employment agreement. So, I grant Bitrate's motion to compel arbitration.

**D.      This lawsuit must be stayed pending resolution of the arbitration.**

Since I find that there is an arbitrable dispute and Bitrate has requested a stay of this lawsuit pending arbitration, this case must be stayed. Section 3 of the FAA requires that district courts stay all proceedings on arbitrable issues while the parties complete arbitration.[68] And the United States Supreme Court held in *Smith v. Spizzirri* that, when a district court finds a lawsuit involves an arbitrable dispute and a party requests stay of the court proceeding pending arbitration, Section 3 compels that court to stay—and not dismiss— the proceedings.[69] That's

---

[67] *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000).

[68] 9 U.S.C. § 3 ("[The court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default proceeding with such arbitration.").

[69] *Smith v. Spizzirri*, 601 U.S. 472, 477 (2024).

13

because the FAA provides that the court "shall on application of one of the parties stay the trial of the action . . ." and the Supreme Court found the statute's use of the word "shall" to "create an obligation impervious to judicial discretion."[70] So I grant Bitrate's request to stay this action for all purposes pending the conclusion of the arbitration proceedings.

### E. Bitrate's request for fees and costs does not comply with this district's local rules.

In its motion, Bitrate also summarily asks for an award of the attorney's fees it incurred in filing this motion.[71] This district's Local Rule 54-14 requires that a "motion for attorney's fees must include," among other things, a "reasonable itemization and description of work performed," a "brief summary" of the time, labor, novelty, difficulty, and skill required by the work performed, and an attorney affidavit authenticating billing information and confirming that the fees and costs charged are reasonable."[72] The local rule warns that "[f]ailure to provide" this required information "may be deemed a consent to the denial of the motion."[73] But Bitrate did not provide any of that information and therefore failed to comply with Local Rule 54-14. So I deny the request.

## Conclusion

IT IS THEREFORE ORDERED that Bitrate Production's motion to compel arbitration and stay this case pending arbitration **[ECF No. 10] is GRANTED**, but  Bitrate's request for

---

[70] *Id.* at 476.
[71] ECF No. 10 at 6.
[72] L.R. 54-14(a)–(b).
[73] L.R. 54-14(c).

1 | attorneys' fees is denied.  **Plaintiff Tatum Gitlitz must arbitrate her claims in accordance
2 | with the terms of the arbitration clause in her employment agreement**.  **THIS CASE IS
3 | STAYED** for all purposes pending that arbitration, and the Clerk of Court is directed to
4 | **ADMINISTRATIVELY CLOSE** this case.

_____
U.S. District Judge Jennifer A. Dorsey
October 31, 2024